IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LINDA STEVENSON-SINGLETARY,

    Plaintiff,

v.                                          CASE NO. 1:15-cv-77-MP-GRJ

CAROLYN COLVIN, Commissioner
of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits and Supplemental Security Income. ECF No. 1. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 8, 13, 16. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI benefits on May 17, 2011, claiming disability commencing on May 13, 2011, due to chronic

obstructive pulmonary disease (COPD), arthritis of the bilateral shoulders, obesity, post-traumatic stress disorder (PTSD), and anxiety/depression.  R. 197-98.  The claim was denied initially and on reconsideration, and Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on July 31, 2013.  R. 30-63.  On August 26, 2013, the  ALJ found Plaintiff not disabled and denied benefits.  R. 12-23.  The Appeals Council denied review.  R. 1-4.  This appeal followed.  Plaintiff asserts one issue for review:  The ALJ violated the Eleventh Circuit's treating physician rule with respect to the opinion of Dr. Jesse Lipnick, M.D., a neurologist who treated Plaintiff in connection with her complaints of carpal tunnel syndrome.  ECF No. 13.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of

---

[1] *See* 42 U.S.C. § 405(g) (2015).

a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the

---

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2015 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

### III.  SUMMARY OF THE RECORD

#### A.  Findings of the ALJ

The ALJ found that Plaintiff has the severe impairments of COPD, arthritis of the bilateral shoulders, and obesity. R. 14. The ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

impairment. The ALJ determined that Plaintiff retained the residual functional capacity for sedentary and light work with additional postural and environmental limitations, including a limitation to frequent lateral reaching, handling, and fingering, bilaterally. In determining Plaintiff's RFC, the ALJ concluded that the opinion of treating physician Dr. Lipnick, who found that Plaintiff was unable to perform even sedentary work, was entitled to little weight because it was not supported by the medical evidence. Based on this RFC assessment and the testimony of a vocational expert (VE) at the hearing, the ALJ determined that Plaintiff could perform her past relevant work as an accounts payable clerk and a file clerk and therefore was not disabled. R. 14-23.

### B. Medical Evidence

Because the issue raised on appeal concerns Plaintiff's physical impairments, the following summary focuses on the medical records relevant to such impairments.

Plaintiff was treated for an exacerbation of COPD in May of 2011. R. 319, 333-338, 346, 365-367. The records reflect that Plaintiff continued

to smoke during her hospitalization. R. 347-48. On May 27, 2011, an echocardiogram/ultrasound revealed normal systolic function with mild functional limitations. R. 319. On May 28, 2011, an examination noted expiratory wheezing. R. 336.

On July 14, 2011, Dr. Preston Green, a cardiologist, noted Plaintiff's lungs were clear, and she had a systolic murmur. Neurological examination was normal. Dr. Green diagnosed atypical chest pain with a history of dyspnea on exertion and recurrent palpitations. Dr. Green also diagnosed COPD with "heavy tobacco use" and hypertension. R. 383. In September 2011, Dr. Green diagnosed chronic bronchitis, hypertension (well controlled), and occasional chest pain and dyspnea. R. 382.

Dr. Lance Chodosh conducted a consultative examination of Plaintiff and noted that she had clear lungs with some episodes of uncontrolled coughing and heart sounds were regular without murmur. Plaintiff had some limited range of motion of the shoulders due to pain, and exhibited no tenderness or spasm of the back. Dr. Chodosh found that Plaintiff had normal motor function with 5/5 strength and normal manual dexterity. She had a normal gait with ability to heel and toe walk. He diagnosed chronic

bronchitis secondary to smoking, mild obesity, and chronic anxiety/depression.  Dr. Chodosh indicated Plaintiff could stand/walk but could not walk quickly or for prolonged periods.  Dr. Chodosh also noted Plaintiff could lift and carry up to 20 pounds, but not extensively, and could handle objects.  R. 388-91.

On February 15, 2012, an EMG test of the hands revealed bilateral median nerve entrapment, mild on the right and severe on the left, with no evidence of peripheral neuropathy or radiculopathy.  The EMG test also disclosed osteoarthritis with multi-joint pain and swelling.  Dr. Jesse Lipnick's neurological examination revealed APB strength of 4/5 bilaterally and hand intrinsic strength of 5/5 bilaterally.  Her reflexes were intact and sensory was within normal limits.  He recommended Plaintiff stop smoking, consider treatment for carpal tunnel syndrome with NSAIDs, vitamin B6, and steroid injections, and advised a surgical consultation.  R. 424-31.

Dr. Anan Afaneh evaluated Plaintiff for rheumatoid arthritis.  He noted diffuse body pain, and pain and tenderness in the upper arms and shoulders.  Dr. Afaneh diagnosed myalgia, fibromyalgia, trochanteric

bursitis, and rotator cuff tendonitis, and prescribed Flexeril, Ibuprofen, and physical therapy. R. 448-51.

In May 2012, Dr. Lipnick completed a physical capacities evaluation checklist form. The checklist reflects that Plaintiff can sit and stand/walk for only 1-2 hours each and that she needs an opportunity to alternate sitting and standing at will. Plaintiff cannot use her hands adequately for pushing and pulling, and cannot use her hands for repetitive motion tasks such as writing, typing, and assembly. Dr. Lipnick assessed that Plaintiff could only occasionally lift up to 10 pounds and could never climb, balance, stoop, kneel, crouch, and could only occasionally crawl. He found "severe" restriction of activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust, fumes, and gases. He assessed that Plaintiff suffers from fatigue due to morbid obesity, but that her fatigue does not prevent her from working full time. R. 432-33.

In June 2012, Plaintiff underwent left median nerve release surgery. R. 445-46.  X-rays taken in September 2012 indicated minimal arthrosis of the right shoulder and mild thoracic spondylosis.  R. 541-542.

In March 2013, Dr. Allen Winston examined Plaintiff and diagnosed stable anxiety/depression, improved acute bronchitis, hyperlipidemia, and hyperglycemia.  R. 551-53.  A July 2013 chest x-ray indicated mild COPD with no pleural effusion.  R. 562.

In September 2011, Terri Johnson, a non-medical source, completed an RFC assessment and concluded that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and sit and stand/walk for about 6 hours each in an 8-hour workday.  Plaintiff had unlimited ability to push/pull and operate hand and/or foot controls.  She had postural limitations due to COPD and heart condition.  She had no manipulative, visual, or communicative limitations, but some environmental limitations due to COPD and a heart condition.  R. 93-95.

In February 2012, state agency physician Dr. James Mabry reviewed the medical evidence and concluded Plaintiff could perform light and sedentary work. He indicated Plaintiff could lift and carry up to 20 pounds occasionally, and could stand/walk and or sit up to 6 hours each during an 8 hour day. Dr. Mabry noted Plaintiff could frequently balance, stoop, kneel, and crouch. She could occasionally climb ramps/stairs and crawl, and could never climb ladders/ropes/scaffolds. He identified no manipulative limitations. Dr. Mabry noted environmental limitations against concentrated exposure to temperature extremes, humidity and work hazards, and no moderate exposure to fumes, odors, etc. R. 116-18.

In June 2012, state agency physician Dr. Gucharan Singh reviewed the medical evidence and concluded Plaintiff could perform light and sedentary work. Dr. Singh indicated Plaintiff could lift and carry up to 20 pounds occasionally, and could stand/walk and/or sit up to 6 hours each during an 8-hour day. Plaintiff could frequently balance, stoop, kneel, and crouch. Dr. Singh noted limitations to frequent handling and fingering. He indicated Plaintiff could occasionally climb ramps/stairs and crawl, and could never climb ladders/ropes/scaffolds. Dr. Singh noted environmental

limitations against concentrated exposure to temperature extremes, vibration, work hazards, fumes and odors.  R. 435-39.

### C.  Summary of Hearing Testimony

Plaintiff was 54 years old at the time of the hearing and has a high school education.  Plaintiff's housekeeping activities include sweeping and dusting once a week, washing dishes, and preparing simple meals.  She goes grocery shopping with her husband but uses an electric cart.  Plaintiff does not go out and has limited social activity.  She reads novels and magazines, but does not use a computer.  Plaintiff does not do yard work and cannot be outside for long.  She was expecting to receive portable oxygen.  Plaintiff uses a CPAP machine with oxygen.  Plaintiff takes multiple medications, including medication for pain in her shoulders and arms.  If she does housework, such as washing a lot of dishes, then she takes extra pain medication.

With respect to hand function, Plaintiff can tie her shoes on some days if her hands are not stiff and cramping.  Her husband helps her with her hair.  She sometimes has difficulty buttoning a blouse, if her hands are numb.  She can hold a cup for a short amount of time.  She is able to use a

pen without any problems, but does most of her bill paying over the phone. She can only write a three or four line note before her hands start to cramp. Plaintiff testified that she cannot use a computer because her fingers ache. She is able to pick up a paper clip and use the dials on a radio.

Plaintiff can sit for short periods of time until her feet fall asleep. Plaintiff's hands also fall asleep. Plaintiff estimated that she could only sit for about 10 minutes at a time and could only walk for 10 or 15 feet. She is able to lift about five pounds, once or twice. Plaintiff is able to drive but avoids it because of sleep apnea. R. 36-58.

The VE testified that a person with Plaintiff's age, education, and work experience, who can work at the light exertional level with some postural and environmental limitations, and with manipulative limitations of no overhead work, frequent lateral reaching, frequent handling, and frequent fingering, could perform Plaintiff's past work as an accounts payable clerk and file clerk. R. 58-62.

## IV. Discussion

In her sole issue for review, Plaintiff contends that the ALJ failed to apply the correct legal standards to the medical opinion of treating physician Dr. Lipnick. Plaintiff argues that Dr. Lipnick, as a specialist in rehabilitative medicine, has education, training, and experience that uniquely qualifies him to determine a patient's RFC. ECF No. 13 at 1. Plaintiff asserts that the ALJ failed to articulate good cause for not crediting Dr. Lipnick's opinion. She contends that the ALJ's analysis of Dr. Lipnick's opinion was "superficial" and that the ALJ "[e]ssentially . . . claims that Dr. Lipnick is biased just because he treats Plaintiff Singletary . . . . Assuming that treating physicians will lie for their patients because of their relationship with the patient, turns the Treating Physician Rule on its head. Under [the ALJ's] view the last person an ALJ should rely on is the treating physician." *Id*. at 19-20.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[14] If a treating

---

[14] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found

physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[15]

While there is no requirement for the ALJ to discuss every medical record in the administrative record, he is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[16] Additionally, because an ALJ is not permitted to substitute his judgment for that of the medical experts,[17] the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.[18]

---

'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[15] 20 C.F.R. § 404.1527(d)(2).

[16] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[17] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

[18] Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.[19]

To determine the weight to be accorded a treating physician's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d), which include the length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the records as a whole, and specialization of the treating physician.

In assessing the medical evidence, the ALJ noted that Dr. Lipnick was a treating neurologist who had treated Plaintiff for approximately four months in 2012. The ALJ summarized Dr. Lipnick's physical capacity evaluation, which concluded that Plaintiff was significantly limited in her abilities to sit, stand, walk, lift, carry, perform postural tasks, and interact with various environmental conditions. The ALJ found that while Dr. Lipnick examined Plaintiff on several occasions, his opinion was not consistent with the medical evidence of record, which the ALJ had thoroughly discussed. The ALJ in particular observed that there was no

---

[19] Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).

credible evidence that Plaintiff could not use her hands to push or pull or that she has limited ability to tolerate repetitive movement, as Dr. Lipnick had found.  In support of this point, the ALJ noted that while Plaintiff was diagnosed with carpal tunnel syndrome, examinations performed prior to her June 2012 left carpal tunnel release surgery "showed little more than positive Tinel's and Phalen's tests; she was able to write and remove and replace a screw cap on a small bottle, and she had full grip strength."  R. 23 (citing Dr. Chodosh's examination of Plaintiff in September 2011 and Dr. Lipnick's examination in February 2012).  The ALJ determined that this medical evidence suggests that Plaintiff was not as limited in pushing, pulling, or performing repetitive tasks as Dr. Lipnick had found in his May 2012 physical capacity assessment.

    The ALJ also noted that during his examination of Plaintiff Dr. Lipnick had described no abnormalities in her gait or leg strength and did not indicate tenderness, limited range of motion, reduced strength, or diminished sensation in any area, and therefore the work-related limitations that Dr. Lipnick identified were in direct conflict with his examination notes.

The ALJ determined that Dr. Lipnick's opinion was not supported by the evidence and therefore was entitled to little weight.

The ALJ accorded some weight to the opinion from Dr. Mabry, and significant weight to the opinion from Dr. Singh, non-examining state agency physicians. The ALJ found that Dr. Singh's opinion was supported by the objective findings and other evidence in the record. R. 21-22, 23.

To the extent that Plaintiff's argument rests on her assertion that the ALJ's opinion reflects "bias" against Dr. Lipnick because he was Plaintiff's treating physician, the Court finds that this assertion is unfounded. There are no statements in the ALJ's decision which reflect any bias against Dr. Lipnick, let alone any assumption by the ALJ that a treating physician will "lie" for a patient because of a relationship with the patient, as Plaintiff asserts. *See* R. 22-23.

On this record, the Court concludes that the ALJ articulated good cause for not affording substantial or considerable weight to Dr. Lipnick's physical capacity assessment. As the ALJ carefully explained, the assessment was not supported by the medical evidence in the record, including the examination by Dr. Chodosh and Dr. Lipnick's own examination notes. The ALJ's decision reflects that he correctly

considered the factors set forth in 20 C.F.R. § 404.1527(d) in determining that Dr. Lipnick's opinion should be afforded little weight.  *See* R. 22 (noting Dr. Lipnick's specialization, the length of treatment and frequency of examination, and the lack of support and consistency for the opinion in the medical evidence).  Accordingly, the Court finds that the ALJ's decision to afford the opinion little weight is supported by substantial evidence.

## V.  RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** this 1st t day of September 2016.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not</u>**

**control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.